Morning everyone. First matter is Watts v. United States. Ms. McGrane. Morning, Your Honors. May it please the Court, Julie McGrane on behalf of the Appellant from Office of the Federal Public Defender on behalf of Appellant Leonard Watts. I'd like to reserve three minutes for rebuttal. Okay. This case presents one of apparent first impression, not only in this court but in the nation, whether or not a defendant who successfully vacates a prior sentence for legal error and that sentence was used to enhance his prior his current federal sentence is entitled to re-sentencing under 28 U.S.C. 2255. The District Court in this case found that Mr. Watts was not entitled to of 4A 1.2. The court said that only if it is a prior conviction that the defendant is successful in vacating for legal error will the defendant be entitled to re-sentencing. What authority do you have for the proposition that rather than a conviction, a sentence would qualify Mr. Watts? Well, Your Honor, first of all, by not allowing Mr. Watts to be re-sentenced, it's producing the same due process violation as a conviction would produce in this case. This was an avenue of relief made available to defendants under Custis, Daniels, Johnson, which says that if a defendant is successful in vacating a prior conviction on the basis of legal error or constitutional error that they're entitled to then be re-sentenced under 2255. Because the due process violation that occurs is the District Court relying on factually erroneous information to enhance their current federal sentence. But there is no authority, is there, for equating the sentencing situation with the conviction situation, is there? While Custis and Daniels and Johnson speak to prior convictions, not to prior sentences, that's correct, Your Honor. However, our position is that the due process violation remains the same. That it's clear here that there was an error made, a legal error, that the sentence was vacated by the court in the Eastern District of Pennsylvania and Mr. Watts followed the only procedure available by law where he went back, vacated that prior sentence on the basis of legal error, came back to the court in 2255 and said to the District Court, I am being held in custody on the basis of a factually erroneous guidelines calculation. Although there is a difference. I mean, if your conviction is overturned, you're not, you know, you haven't been convicted of the crime, you're not guilty of the crime. With a sentencing, you're going to be re-sentenced. Well, something was wrong with it, but it's not like you should never have ever been sentenced. I would respectfully disagree with that analysis and I would point to the First Circuit's opinion in Mateo, which addresses the fact of prior conviction that's vacated, not a prior sentence. But in Mateo, Mr. Mateo was serving a term of probation, which had been extended by a violation petition warrant and when he committed a federal offense. His sentence was enhanced by the basis that he was on this term of probation at the time he committed the instant federal offense. He successfully vacates his prior conviction for legal error on the basis of the voluntariness of the plea. I would submit that doesn't go to his guilt or innocence, it's a legal error that vacated his conviction based on the voluntariness of his plea and he's entitled to be re-sentenced. Again, it's not a matter of whether he was guilty or not of that offense. He could go back and the same thing could happen, that his plea could be entered again. He admitted his guilt on that offense. He was serving a term of probation at the time that he committed the instant federal offense. It's just not logical that his situation is any different than Mr. Watts' situation. What about Lewis? Well, Your Honor, in Lewis, that involved the application of a criminal statute. What used to 1202, what is now 922 G, felon in possession of a weapon. Lewis relied on the mere fact of a prior conviction to apply a firearms disability to a person and the court said that there were policy reasons that we would not someone who has a current, valid, prior conviction to possess a firearm. But the difference is that the sentencing guidelines don't rely on the mere fact of a prior conviction or the mere fact of a prior sentence. They rely on the reliability of that prior sentence. And there's at least... You know, if this was before Booker, it seems like you'd have a much stronger argument than you do after Booker, because the court can still consider this. And I cannot imagine a judge who wouldn't consider the fact that the defendant thought he was under a term of supervised release and he goes out and manages to rob another bank anyhow. Any sentencing judge is going to factor that into the equation in determining the appropriate sentence. And that certainly may be the case, but what we're talking about here is whether Mr. Watts is even entitled to be resentenced. We're talking about the proper process that he's due, the proper procedure that should be followed, and whether or not the district court imposes the same sentence if Mr. Watts is eligible for resentencing. That's something that the district court would consider and we would be able to argue those policy reasons at the district court level. Because the government's position is that the district court would have applied the same sentence anyway. But that's not clear from the record. On page 114 of the appendix, the district court clearly states that we can't say what Judge Prater in the Eastern District of Pennsylvania would have done, or say what I would have done in this case, had the court determined that Mr. Watts was eligible for resentencing. So we respectfully submit that Mr. Watts should have that opportunity to have this process available to him and then be able to be sent to the district court. Is there a substantial constitutional right at issue though? Because that's what's driving the COA. And given the post-Booker scenario, why would it be a substantial constitutional right? Because defendants are entitled, this court has stated that defendants are entitled to be sentenced under a correctly calculated guideline range. And the Supreme Court has said that district courts cannot rely on materially false information to the detriment of the defendant in imposing sentence. And in this particular case, Mr. Watts' criminal history category would be reduced by one from a criminal history category three to a criminal history category two. His guideline range would go from 57 to 71 months to 51 to 63 months. The actual sentence imposed was 70 months, which is well above the correctly calculated guideline range. The guideline range that would be applied is if the district court had relied on the correct information. And Mr. Watts is entitled to that correctly calculated guideline range and to have the court consider the correct range. Doesn't Lewis really dictate the result here? There the court said it's important to note that a convicted felon may challenge the validity of a prior conviction or otherwise remove his disability before obtaining a firearm. By the same token, here Watts could have challenged his sentence before committing an offense. But once he committed an offense while he was on an unchallenged supervised release, he's out of luck according to Lewis. Well again, I think Lewis talks about the mere fact of a prior conviction, not about the reliability or the accuracy of that prior conviction. And there are different... Well here we have the mere fact of an existing sentence, which was existing. The supervised release was in effect when he committed an offense, just as the conviction was in effect in Lewis when he got the firearm. An underlying conviction is still there. That's absolutely correct. The underlying conviction is still there. But at least two circuits, the Ninth Circuit in Claussen and the First Circuit in Snyder, have held that Lewis is inapplicable where a prior conviction was used to determine punishment rather than define the offense. And that's what happened in this case. This is not about defining the offense. It's not about whether Mr. Watts is guilty of a particular offense. It's about what the appropriate punishment for that offense is. No, it's about what the defendant did when he was of a certain status, i.e. he'd been convicted, he obtained a firearm. Here, he was on supervised release, he committed an offense. But the problem is that he was not supposed to be on a term of supervised release. Well, he wasn't supposed to be convicted either. Well, he was and he knew it. And knowing he was convicted, he carried a firearm. Here, knowing he was on supervised release, he committed an offense. And that is absolutely a concern that the district court should be able to address when he's resentenced. That should not be a factor that should bar him from being considered under the appropriately calculated guidelines. Can you give me the second case you cited? Yes, it's Snyder from the First Circuit. Mr. Gross is arguing, and we've dressed into the merits here, but there's an issue about whether or not we should get to the merits. Mr. Gross is arguing that there's no showing of the miscarriage of justice or cause of prejudice required to jump over the Ed book hurdle. What's your response to that? Well, with respect to the cause and prejudice issue, first we suggest that the government has waived that issue by not raising it. While the court can consider the government's cause and prejudice argument, it's completely discretionary and our position is that the court should not consider it in this case. This issue was fully briefed on the merits. There was first a certificate of appealability granted in which we that this raised a constitutional violation. The government did not respond to our application for a certificate of appealability. We fully briefed the issue on the merits, and it was only in the government's response to our merits brief that these issues were waived. So we would ask that the court deny it on that basis. There's also no need to establish cause and prejudice in this case because this is not an issue that could have been raised at sentencing or on direct appeal. This court is very clear in Thomas that challenges to collateral tax on prior convictions are not available at sentencing or on direct appeal. The only way that Mr. Watts could seek this relief is in 2255, and that's exactly what he did. How about the waiver? The waiver of the due process? No, the waiver of the appeal. There's a written waiver here, as you know, in a plea agreement, and it appears to waive an appeal with respect to any challenge to the criminal history other than on direct appeal. And it's hard to argue that that was inadvertent because with respect to offense level, they talk about 2255, et cetera. That is correct, Your Honor. Our position is that Watts does not dispute that there is a 2255 waiver in this case, but as the district court found below, the nature of that waiver is ambiguous. It talks only about the offense level and not about the criminal history category. When you're talking about a guidelines range, it has two components, and we're not saying that Mr. Watts in this particular instance, and I see my time is up. Can I finish? Go ahead. We're not saying that Mr. Watts is challenging a correctly calculated criminal history score and trying to get something lower. This was an incorrectly calculated criminal history score, and he's asking for resentencing within a range that's encompassed by the correct criminal history category and the stipulated offense level. Even if this court does not agree with the district court that it was an ambiguous waiver, this court in Katak has said that a miscarriage of justice may excuse the waiver, and we would argue that this is a case of first impression with due process concerns, grave error to the defendant, and we would ask that any waiver be excused. I'm looking at the language from the waiver. I can't find anything ambiguous in there at all. Voluntarily waives right to file any appeal and collateral attack. I mean, I could say, I guess, or collateral attack, or any other writ or motion including but not limited to an appeal under 3742 or 2255 which challenges the sentence imposed by the sentencing court if the sentence falls within or below the guideline range arising from the offense, the guideline offense level of 23, and I just don't see any ambiguity there. Well, again, Your Honor, it talks only about the offense level, and it does not talk about the criminal history category, and that gives a wide range. Well, I know that's your argument. So, okay, thank you. Okay, thank you. Good morning. Good morning. May it please the court, Norman Gross, I'm an assistant United States attorney on behalf of the government. There are no cases, as Judge Rendell pressed my adversary, that says that the vacating of a sentence of supervised release justifies the district court to go back and sentence the person under a new offense level, and there's a good reason for that. If a conviction is vacated, a conviction that was used to impose a criminal history category, what that means is that there's no longer any judicially reliable finding that a person actually committed the crime. A person gets a higher criminal history category based on the number of convictions that they accrue, and if a conviction that the district court considered is now determined by the court that imposed that conviction, shouldn't have been imposed either because, for instance, the evidence was insufficient, they actually weren't proven guilty, or there was a constitutional violation. That's just something that the sentencing court in the instant case shouldn't have considered to begin with, and the defendant should be resentenced. That's not what happened here. The defendant was properly convicted in the Eastern District of Pennsylvania of the Multiple Hobbs Act robberies. The defendant was served the prison sentence, went on supervised release, and there's no dispute that the defendant violated the terms of the supervised release within the period of supervised release. The case went in front of Judge Prater, and she had various options about what to do at that point, and what she did. That's Prater. Prater, I'm sorry. In case you have to go back on remand. But, okay. It would be remanded to Judge Hillman, though, and I. Okay. But, thank you, Your Honor. But, the case went in front of Judge Prater, and she had various options about what to do. Because she imposed the maximum term of supervised release, she wasn't supposed to just impose a new term of supervised release. She could have opposed one day of prison, and then imposed the same period of supervised release. So it was a wrong sentence. It was a wrong sentence. Just the same way that there's a wrong sentence if you consider the fact of a prior conviction. The sentence is wrong. But the difference, as Your Honor pointed out, is that when, that, what Mr. Watts should have done. He should have objected at the time that the wrong sentence was imposed, but he didn't, of course, because it was to his benefit. That was an error that, that was to his benefit, and, and shame on us, my colleagues in the EDPA, who didn't object and say, Judge, you've got to give at least one day of, of prison if you want to give him more supervised release. But, but we didn't. But, the defendant believed, and this is the crucial difference. He believed that he was under a legitimate term of supervised release. That's a very good argument. Went to New Jersey and committed another robbery. Why not let the district court go back and, and this is one of these cases they read the briefs and they say, why are we here? I mean, this, the simplest way, when you take all the adversarial stuff out of this, and you take the lawyers out of it, the simplest way to resolve this is to go back to the district court. If the judge wants to consider the fact that he thought he was on supervised release at the time he committed the subsequent offense, and factor that into the calculation once again, and give the same sentence, fine. If, however, she wants to conclude, well, you know, my sentence was based in part upon the fact of his being on supervised release, not the fact that he thought he was on supervised release. Had I known he wasn't on supervised release, I wouldn't have given him the same sentence. I'm going to reduce it by whatever she decides to reduce it by. Is that just too simple for lawyers to comprehend? Why not just do that? I mean, it takes away a chance to appear here and argue, but we get a better, we get a better result. We get perhaps a more just result. Nobody can complain. If you get 70 months, you're satisfied. Your colleague may not be satisfied, but there's nothing she can do about it. It's well within the district court's discretion. What's the big deal here? But Judge Prada did what, you know, what she did. Okay, she did. So answer my question. Why not just let her consider this and determine whether or not she wants to factor that into a resentencing, whether or not from her perspective it's irrelevant? Your Honor, Judge Hillman, the sentencing judge in the District of New Jersey, has already considered the fact that Judge Prada did what she did, and that is that she vacated her sentence of, her prior sentence of supervised release because it was technically improper, and she also wiped out an 18-month custodial sentence that she'd imposed on Mr. Watts because he violated his second term of supervisory release. Okay, but the time this sentence was imposed, who was the sentencing judge who imposed the sentence? The sentencing judge in this case was Judge Hillman. He imposed the sentence when Judge Prada's supervised release term was still in effect. And at the time he imposed it, he thought that the defendant was validly serving a term of supervised release. That's right. And it may be that he would impose the same sentence whether or not the defendant was actually serving supervised release because just in terms of the purposes of sentencing, from a policy perspective, it doesn't really matter. You can make the argument, it doesn't matter. If the defendant thought he was under supervised release, in terms of the defendant's psyche and potential for likelihood of recidivism and all that stuff, it's the same. You can make that argument. Maybe the judge would agree with you, or maybe the judge would think, well, had I known he actually was not on supervised release, I would not have imposed the same sentence. But, Your Honor, the judge knew that at the 2255 hearing, and in fact, Mr. Watts didn't say to Judge Hillman... I'm missing something. Is that the sentencing hearing, the 2255? I'm talking about the 2255 hearing. That's the first time when Judge Hillman knows that the supervised release term in the Eastern Dictate of Pennsylvania has been vacated. So you're saying that he had the chance to re-sentence at the 2255? He did. I mean, Mr. Watts could have come in and said at this point, he said, okay, Judge Hillman, even though you're not going to reduce my criminal history category because of the way you've construed the guidelines, and we think appropriately, so we're still going to ask you under Booker to exercise your full time off because I was serving an invalid sentence of supervised release. I thought it was valid, but in fact, it was invalid. They could have asked Judge Hillman to do that. In a habeas proceeding. I'm not sure we would have agreed with them, and I'm not sure we would have said that was an appropriate claim to make on 2255. Well, in fact, I'm sure you would have said it's an inappropriate claim. But they certainly could have done it. Because it's a habeas proceeding and not a sentencing hearing, and now you're saying, well, they could have asked, they could have converted the habeas proceeding into a sentencing proceeding, even though a second ago you said you're not sure you would have agreed to that because it's not an appropriate argument to make. But what I understand Your Honor saying is that you should send this case back to Judge Hillman again and let him consider now the fact that the prior sentence of supervised release, the EVPA sentence of supervised release, was vacated. And all that information was available to Judge Hillman, and, you know, You're saying a second ago it would have probably been inappropriate for him to resentence at the 2255? I think it would have. But it's just as if that's the case, Your Honor, the same procedural obstacle would apply if Your Honor's remanded this case now. I mean, this defendant is now on collateral review. He has waived claims, you know, from Jump Street. He should have objected when the initial invalid supervised release term was imposed back in November. But what about the discourage of justice argument that we mentioned in Kedrick? In fact, I don't know if your name was on the brief. I don't know if you wrote the brief. I did. There's a statement in here which strikes me as going from the beyond mere hyperbole and into absurd. And that is on page 34, we basically say the possibility of serving an extra seven months in prison is, quote, hardly the stuff of a miscarriage of justice. Your Honor, I absolutely stick with that position. Here's why. Mr. Gross, I thought you were much too good of an attorney to make that kind of a statement. Okay, Your Honor. You stick with it. I do stick with it. And here's why. When we enter into these waiver provisions, what we're doing is we're buying peace. We're buying the expectation that we will not have to come down here in front of the Third Circuit and litigate this case anymore because it's supposed to be over. Even if doing so avoids a miscarriage of justice? No. If there's a miscarriage of justice, then our waiver is wiped out. What I'm saying is it's not a miscarriage of justice. Because it's only seven months in prison. That's right. A miscarriage of justice. A miscarriage of justice has to be something more than mere error which might increase the defendant's sentence. Because this Court has said in Katak that garden variety claims of error are simply not enough to amount to a miscarriage of justice. I mean, here, Your Honor, if you were to find that this was a miscarriage of justice and our 2255 waiver should be disregarded, what you're saying is every time that there's an error in a sentencing guidelines calculation which may hurt the defendant, then the 2255 waiver has no effect. No, that's not what we would be saying. And I don't know if this is the result that we would agree upon or even that I believe this yet. But for purposes of this discussion, what we'd be saying is where there is an error of fact and the judge is under a misapprehension of fact and imposes a sentence, and but for that error of fact, the defendant may have served seven months less in prison, it's a miscarriage of justice to allow the defendant to serve an extra seven months in prison because the judge was laboring under a misapprehension of fact. You're saying the seven months doesn't really count for that. But then your position is that every time there's an error, our 2255 and our appeals waiver can't apply. And that's just not what we're doing. We traded a very substantial five-year mandatory minimum sentence under 924C, among other things, in order to get this waiver. And it's the same thing as when the defendant pleads guilty, Your Honor. The defendant may be able to go to trial and be found not guilty and not go to prison at all. But he's waived all those rights. I understand that you're arguing in terms of prosecutorial resources, it's a burden and attack on prosecutorial resources if we don't enforce that. I would submit to you that you'd save a lot of time by just allowing the defendant to go before the sentencing judge and determine whether or not seven months is still appropriate. Then all the time spent into the briefing and the oral argument and everything else, but that's beside the point. Okay. Well, Your Honor, getting back to the merits of the sentencing guidelines claim, if I could, because I think that's the appropriate place for this court to decide this. You put aside all the procedural arguments that we've made, one of which is the appeals waiver. If Your Honor is uncomfortable with enforcing the 2255 waiver because you believe that this is a miscarriage of justice, I submit that the way to decide this case is by finding that Judge Hellman did not err when he construed the guidelines as he did, because application note six is clear. It says that you're not supposed to consider convictions that were vacated, but it doesn't say you can't consider sentences that were vacated. For the reasons largely articulated by Judge Rendell during my adversary's arguments, this guy, Mr. Watts, is exactly in the same position as the defendant was in the 2255 case, because when he committed this crime, he understood that he was on supervised release. And the reason for this enhancement, this two-level enhancement for a person who commits a crime while on supervised release, in fact, another robbery, you know, the same crime that this guy went to prison for ten years for is, you're supposed to be punished more severely than someone who would have committed this crime who was not under supervised release, because you've shown a greater disregard for the law, you've shown a disregard for the fact that the system put you on supervised release and gave you an opportunity to reintegrate yourself into open society. You've shown that you are more likely to be a recidivist and endanger society, and that's why you should be sentenced at a higher level. And all those facts are true regardless of whether or not the supervised release term contained a technical error or not. To give you a somewhat frivolous example, if I came up here and you said to me, sorry, Mr. Gross, you can't argue today, I see you're wearing a blue tie, and we don't want people with blue ties to argue in front of us. I couldn't then stand up here and continue to argue, and you can say, Mr. Gross, we're going to find you in contempt. And I couldn't sit here and say, well, I'm going to argue anyway because you're rule is ridiculous. What I would have to do is go back, like any person who's held in contempt, and attack the underlying order that you say I violated. You've got a rule that people with blue ties can't argue. I'd have to go back and attack that order before I could come back and say, you can't hold me in contempt now. And that's exactly what Mr. Watts should have done. Before he decided to go out and rob a bank while he's on supervised release, he should have gone back to Judge Prater and said, you put me on an inappropriate term of supervised release. He did not do that. Well, I hope you'd suggest that he probably shouldn't have decided to go rob the bank. He shouldn't have. Of course he shouldn't have. He shouldn't have robbed a bank. Of course he shouldn't have robbed a bank. But he was justly received the additional two points because when he robbed that bank, he understood that in addition to the penalties that he would receive for the bank robbery, he was also subject to additional punishment because of the fact that he was on supervised release. There's one other procedural claim that we haven't talked about, and that is our argument that the defendant never presented a due process claim to the district court. The argument in front of the district court was always, Judge Helman, you violated the sentencing guidelines. Now, due process is something beyond a mere guidelines violation, and that's what this court made clear in SEPARO, if I'm pronouncing that correctly. Because there, this court said on bond that a mere misconstruction of the guidelines is not sufficient to get you a certificate of appealability. You can raise that claim in the district court, a guidelines violation, but if you want to go to the court of appeals, you need to allege a constitutional violation. And there was no allegation of a constitutional violation in the district court, and the Supreme Court's recent decision in the McDaniels case, albeit a 2254 case, a habeas proceeding from the state court, was quite clear. There was a similar situation where the defendant raised one kind of claim. He raised the claim that the evidence was insufficient. That's a due process claim. He raised that in the state courts, and he raised it in the district court when he came over on habeas. But it wasn't until he got to the Supreme Court that he said, I've got a different due process claim now, and I want to complain that the identification procedure was unreliable. And the Supreme Court, in a, in a per curiam opinion, said, you can't change your claims now, you can't raise a new claim on appeal that you didn't raise in front of the district court, and- If you're right, that, pardon me, I didn't, I thought you had completed your- I, I, I had completed, Your Honor. If you're right that there's no allegation in the, there was no allegation in the district court of a due process violation, did the district court have jurisdiction in this case? Yes, Your Honor, the, the district court can consider on 2255, under, under the 2255 statute, it can consider violations of statutory law. But, but the- At least in the Seventh Circuit, however, the laws of the United States does not include the guidelines and the misapplication of the guidelines. I, I don't think that's, I, I, I don't think that's the rule in this circuit, but we certainly didn't make that argument in front of Judge Hillman, and I, and I won't make that argument now. But we do say that, that, that having not made a due process claim in the district court, and, and saying that you violate, not every violation of the guidelines is a violation of due process. And, and this case, I think, shows that. The, the violation in the guidelines here was that there was, that there was consideration of a supervised release term that was technically erroneous. To get to a due process violation at sentencing, the judge has to rely on materially false facts, such as a defendant was improperly convicted. He was convicted in a proceeding in which he didn't have counsel. Those are the kind of cases that Ms. McGrain cites in her brief. So it's possible that the sentencing judge increased the sentence because of an erroneous belief about how bad a person you have here. Well, but he was under supervised release based upon a falsity, and that's a, a nature of a confinement. I mean, couldn't this be constitutional magnitude? I mean, we granted a certificate of appealability, did we not? You did. So? But, but there was an allegation that, that you simply said there was a, there was a possibility of a constitutional finding here. I, I would say on the merits, if you reach them, you should say this isn't sufficient to rise to a due process claim. Because the, the, Judge Hillman knew the important things. He knew what the underlying. We understand that. We've been through that. And the violation really didn't occur until after he refused to re-sentence. That's their position, Your Honor. We, we disagree with that. Their position is that the, the supervised release term, Judge Prado's supervised release term was erroneous when imposed. And so, when, when the original sentencing took place in January of 07, in this case, and, and Judge Hillman considered it, he violated the defendant's due process rights because he relied on a, a supervised release term that, that never should have been imposed in the first place. I understand, Your Honor. Thank you. Unless the court has any other questions. Thank you. The government would like to go back and change what happened in this case. But what's been done has been done. And this court has discretion. I do, but before you go, jump into that, despite the hyperbolic flare at page 34 of the government's brief, which I guess we just have a different interpretation of the use of prejudice. Isn't he right when he talks about, since the, the, the, the sentencing judge, the same thing I discussed with you and with Mr. Gross, the sentencing judge knew everything he had to know to impose an appropriate sentence at the time. And how you label the supervised release, whether he was legally on a term of supervised release, or simply thought he was under court sanction. And he goes out and commits yet another bank robbery. Again, I, I'd have a hard, and maybe the answer is to let the sentencing judge decide it, but I have a hard time imagining a judge changing his position or her position on this set of facts. It's the same defendant, it's the same guy. It, it absolutely is. And given that, how do you then get to a substantial showing of a constitutional deprivation? If the same result would not only possibly occur, but very likely occur, even if the judge knew all this, how do you get to the level of a substantial showing of a constitutional deprivation? But that's not for this court to decide. And this court has repeatedly said that a defendant is entitled to be sentenced under a correctly calculated guideline. Yeah, but the substantial showing of a constitutional deprivation, that is for, that's the due process that gets you here. And without that, you don't get here. But we don't know what Judge Hillman would have done. He said in the record that he does not know what he had done,  And, and what the real error here is, is that Judge Hillman said 2255 is not available to a defendant in this position. Only if your conviction is vacated, not if your sentence is vacated. And that is just an absurd result that comes because the due process violation remains the same. Mr. Watts is potentially serving a minimum of seven months additional prison time, based on the fact that Judge Hillman says you, you do not have the right to seek resentencing under 2255. So really, this is about the process. And it's not about the result. The result is for the district court, not for this court to decide. And with respect to the due process violation, we disagree that it was waived. While it could have been raised explicitly in the district court, it's our position that the claim was implicit in Watts' resentencing request. Daniels defines this type of error as a due process, that an enhanced federal sentence potentially violates due process. Did you mention the Constitution? Not specifically. Not explicitly. I mean, that's kind of a... Not, it was not explicitly, but it's also our position that the claim was not right until the district court said that this is not the proper procedure. That it could not have been raised before this point. And in any event, if the court does consider it waived, it's a prudential, not a jurisdictional concern. And this court held in Rossby Hotel employees that there are a number of reasons to hear an issue raised on appeal for a first time, not important implications of law, procedural issues not previously addressed by the court. There's no prejudice or surprise to the government in this case. We raise the issue in our application for a certificate of appealability. Thank you very much. Thank you. Any thoughts or further arguments? And we'll take a minute under advisement.